## Ex Parte Joe Thompkins.

### No. 3037. Decided November 23, 1904.

**1.—Stock Law—Constitutional Law—Sections Twenty and Twenty-Two Compared.**

If it be conceded that section 22, article 16 of the Constitution is the constitutional provision under which the stock law was passed, there is a difference in phraseology between that section and section 20 regarding local option elections which enumerates certain known subdivisions of a county and then concludes with the language, "or such subdivisions of a county as may be designated by the commissioners court"; whereas section 22 provides, "The legislature shall have the power to pass such fence laws applicable to any subdivision of the State or counties as may be needed to meet the wants of the people;" and is not circumscribed by anything that had gone before, and the word "designate" is not used, which was held to be restrictive of the construction placed upon said section 20 of the Constitution. Distinguishing Ex Parte Heyman, 45 Texas Crim. Rep., 532

**2.—Same—Legislature Delegating Authority.**

Whether the Legislature in passing the stock law, chapter 5 of the Revised Civil Statute, article 4978 seq., did so under section 22 or 23, article 16 of the Constitution or both is immaterial, as it was competent for the Legislature to have submitted the question of a stock law to the vote of the freeholders in the

locality to be affected and to delegate its authority thereto: there being nothing in the Constitution contravening such legislation.

**3.—Same—Subdivision of a County.**

Where the record showed that relator was restrained of his liberty on an alleged violation of the stock law in a certain subdivision of P. county, which is set out in the complaint by metes and bounds; as adopted by the freeholders in a portion of a justice precinct of said county at an election ordered by the commissioners court under the general provisions of the act of the Legislature on that subject. Held that under section 23 of article 16 of the Constitution, the Legislature was authorized in passing a stock law which might be adopted in any subdivision of a county by a vote of the freeholders thereof, and that the contention by relator that this is not one of the known political subdivisions of said county is not tenable. Following Armstrong v. Traylor et al., 87 Texas, 598.

Appeal from the County Court of Panola. Tried below before Hon. J. G. Woolworth.

Appeal from an order remanding relator to custody for a violation of the stock law, on habeas corpus proceedings.

The Commissioners Court of Panola County ordered an election upon the petition of twenty freeholders under article 4978, chapter 5, Revised Civil Statutes, in a subdivision of said county described by metes and bounds whether hogs, sheep and goats should be permitted to run at large in such subdivision, to be held September 20, A. D. 1902. Said election was duly held and the said stock law adopted. Relator was afterwards charged with a violation of said stock law, and arrested and thereupon sued out habeas corpus proceedings before the county judge of Panola County.

Relator in his petition for habeas corpus set up, besides the copies of the order of the commissioners court for the election, the result of such election and then his contention that said election so held within the said territory was illegal and without authority of law under the Constitution, praying to be discharged, etc.

*W. R. Anderson* and *L. W. Allred,* for relator.—Applicant is attempted to be charged with violating article 805a, White's Annotated Penal Code, Act 25th Legislature, p. 112. Applicant contends that he should have been discharged by the Hon. J. G. Woolworth, and the election held to be void, because upon the hearing of his application, it can but be admitted that applicant showed by the evidence that the election was not held in Panola County, and that it was not held in any subdivision of said county, but to the contrary was held in a territory carved out of Panola County, to wit: a part of Justice Precinct No. 2, of Panola County, Texas.

Applicant contends that to hold that the law authorizes the people to carve out of a county such territory as they may desire, and thus authorizing them to create a subdivision of a county, is in direct conflict with article 16, section 22, of the Constitution, and also in direct conflict with article 4978, chapter 5, Sayles' Civil Statute of Texas. And to thus hold would delegate to those favoring the adoption of the law, a means of perpetrating nothing short of fraud: In

this, that those desiring to adopt the law could (and no doubt would:), in surveying the territory within which the adoption of the law is sought, surround and leave out as many as possible opposing the law.

*Howard Martin,* Assistant Attorney-General, for the State.—Relator insists that section 22, article 16 of the Constitution uses "subdivision" in the same sense as it was used in section 20, supra. But the State insists that the law authorizing the election in question was authorized by section 23 of article 16 of the Constitution. This section, as will be observed, does not use the word "subdivision," but uses the word "section" of county. There·is a difference in the meaning of the two words as used in these articles of the Constitution. Be this as it may, our Supreme Court, in the case of Armstrong v. Traylor, 87 Texas, 598, or 30 S. W. Rep., 440, has passed upon the identical question involved in this case adversely to appellant's contention.

HENDERSON, Judge.—Relator in a habeas corpus proceeding in the court below was remanded to custody, and appeals. The record shows that relator is restrained of his liberty, on an alleged violation of the stock law, in a certain subdivision of Panola County, which is set out in the complaint by metes and bounds. It is conceded in the record that, if the stock law in said territory so described, was constitutionally passed, that he is guilty of the offense charged in the complaint. It is contended by relator that this is not one of the known political subdivisions of Panola County; and that article 16, section 22 of the Constitution is authority for the county or any portion thereof to pass a stock law; and that this only authorized the known subdivision of a county to pass such a law. On this subject he refers us to Ex parte Heyman, 45 Texas Crim. Rep., 532, 78 S. W. Rep., 349; Ex parte Mills, 79 S. W. Rep., 555; Kidd v. Truett, 68 S. W. Rep., 310; Com. Court of Nolan Co. v. Bell, 81 S. W. Rep., 526. These cases are authority for the proposition that under the constitutional provision regarding local option, the commissioners court can only designate some known political subdivision of a county. However, an inspection of that provision of the Constitution and a comparison of the same with section 22 (if it be conceded that this is the section under which this law was passed) shows that there is a difference in phraseology between the two sections as to the matter of subdivisions. Section 20, regarding local option elections with reference to intoxicating liquors enumerates certain known subdivisions of a county, as "justice precinct, town or city," and then follows the language, "or such subdivision of a county as may be designated by the commissioners court," etc. Section 22 provides "the Legislature shall have the power to pass such fence laws applicable to any subdivision of the State or counties as may be needed to meet the wants of the people." In the last provision, the language used is not circumscribed by anything that had gone before, and the word "designate" is not used, which was held to be restrictive of the

construction placed upon said section 20. So it follows, if appellant is correct that the stock law was passed under said section 22, the authorities invoked would not be applicable. It may be that the Legislature in passing the stock law did so, under both sections 22 and 23 of article 16. By referring to chapter 5 of the Revised Civil Statutes, article 4978, et seq., it will be seen that in the legislation on the subject of the stock law they legislated both with regard to stock and fences, and under the conditions therein named, authorized the freeholders in the respective localities designated by them in the counties to vote whether or not they would adopt a stock law, which involves also a fence law. We believe it was competent for the Legislature to have submitted this matter to the vote of the freeholders in the locality to be affected. We do not think that section 56 of article 3 prohibits the Legislature from delegating authority to the subdivision or section to be affected as to the passage of a stock law. It is a general rule that the Legislature may delegate authority to pass laws to the particular localities to be affected in matters of local concern, unless there is something in the Constitution contravening this. See Cooley on Const. Lim., 6th ed., p. 144-146, inclusive. Sutherland on Stat. Con., section 119; Black Con. Law, 318. Now, whether the Legislature in passing this law did so under one or both provisions of the Constitution makes no difference. Our Supreme Court in Armstrong v. Traylor and Elmore, 87 Texas, 598, had this question under consideration. They appear to hold that section 23 or article 16 is that under which the Legislature passed the stock law, and they use this language in regard thereto: "We hold that the Legislature, being authorized by the Constitution to submit the law to the voters of any subdivision of the county, had the power to adopt the method of ascertaining the subdivision to be affected that seemed most advisable, and could authorize the voters to designate the boundaries of the subdivision in which they desired that the law should be applied. The policy of such course was a matter for the consideration of the Legislature and not of the courts. We further hold that section 23 of article 16 of the Constitution authorizes the Legislature to pass a law regulating live stock, making it applicable to the entire State, or it might have exempted any county or counties from the operation of such law. The Legislature might also have enacted a law regulating live stock in any county or in any subdivision of such county, or it might, as it did in this instance, pass a law not to be enforced in any county or part of a county until adopted." Evidently this language was intended to apply to the first portion of section 23, and to convey the idea that the mere fact that the Legislature was given the power to pass general laws did not inhibit it from passing a law which might be adopted by localities and by a vote of the freeholders of such localities. Furthermore, that there was nothing in the latter portion of the section that restricted the power of the Legislature to delegate authority to communities to adopt a stock law. We hold, in accordance with the views expressed by the Supreme Court, that it

was competent for the freeholders in a portion of a justice precinct of Panola County to adopt a stock law, under the general provisions of the act of the Legislature on that subject. The judgment of the lower court is accordingly affirmed.

*Affirmed.*