

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS                    AUSTIN 11, TEXAS
XWILLXWILSOXXXXX
ATTORNEY GENERAL

Honorable Dave McNeill, Jr.
County Attorney
Shelby County
Center, Texas

Dear Sir:                          Opinion No. O-5795
                                   Re: Whether commissioners' court of
                                       Shelby County is under legal duty
                                       to define the combined area of three
                                       school districts therein located as a
                                       subdivision for stock law election
                                       under Article 6954, V.A.C.S., even
                                       though an incorporated town with
                                       stock law ordinance is located therein,
                                       and related questions.

        As we understand the facts upon which your opinion request is predi-
cated, the freeholders of two common school districts and one independent
school district of Shelby County have joined in a petition to the commissioners'
court under Article 6954, V.A.C.S., asking that a stock law election be held in
the described area as a subdivision of the county. It also appears that the in-
corporated town of Center is located within the proposed boundaries and that
the commissioners' court has refused to call the election on the ground that
the town which has its own stock ordinance is included in the area.

        You wish to know: (1) whether the commissioners' court under the
facts stated is under legal duty to order the election, and (2) if the Court is not
bound to do so, may the election be ordered by it though the proposed subdivision
contains an incorporated town having its own stock ordinances.

        Article 6954, V.A.C.S., reads in part as follows:

        "Upon the written petition of one hundred (100) freeholders
of any of the following Counties:  . . . Shelby . . . or upon the pe-
tition of fifty (50) freeholders of any such subdivision of a county
as may be described in the petition, and defined by the Commis-
sioners' Court of any of the above-named counties, the Commis-
sioners' Court of said county shall order an election to be held in
such county or such subdivision of a county as may be described
in the petition and defined by the Commissioners' Court, on the

day named in the order, for the purpose of enabling the freeholders of such county or subdivision of a county as may be described in the peti- tion and defined by the Commissioners' Court to determine whether horses, mules, jacks, jennets, and cattle shall be permitted to run at large in such county or such subdivision of a county as may be described in the petition and defined by the Commissioners' Court." (Emphasis ours)

In answering the first question it is necessary that we construe the word- ing of the above quoted statute, particularly the underlined portions. The statute says that the election shall be called by the commissioners' court in "any such subdivision of a county as may be described in the petition, AND DEFINED BY THE COMMISSIONERS' COURT. . . ." It is to be noted that this language recurs through- out the statute. From this provision should we infer that the Legislature delegated to the petitioning freeholders the sole authority to determine by the petition the boundaries within which the stock law election is to be called, leaving the commis- sioners' court no discretion in the matter whatever and imposing upon it the minis- terial duty of adopting the definition of the proposed district as set out in the peti- tion? Or, on the contrary, was it the legislative intent to confine the holding of stock law elections under this statute to those subdivisions of the county already existing and previously defined by the commissioners' court for other purposes, together with such subdivisions as the commissioners' court in the exercise of discretion is willing to define and designate as subdivisions for stock law purposes?

We have reached the conclusion that the latter construction should be given the act after a consideration of its legislative history. The original stock law provision dealing with horses, mules, etc., was contained in Chapter 128 of the Acts of the 26th Legislature (1899) at page 220. Relevant portions of that Act read as follows:

"Upon the written petition of one hundred freeholders of any of the following named counties . . ., or upon the petition of fifty freeholders of any subdivision of any of the above named counties, the commission- ers' court of said county shall order an election to be held in said county or subdivision . . . ."

Construing the language of an earlier act dealing with hogs, sheep and goats, the pertinent parts of which were almost identical with the language of the statute just quoted, our Supreme Court in Armstrong v. Traylor, 30 S. W. 440, had this to say about the designation of a subdivision for the purpose of calling a "hog law" election.

"To the third question we answer that the legislature, being auth- orized by the Constitution to submit the law to the voters of any subdivi- sion of a county, had the power to adopt the method of ascertaining the

subdivision to be affected that seemed most advisable, and could
authorize the voters to designate the boundaries of the subdivision
in which they desired that the law should be applied. The policy of
such a course was a matter for the consideration of the legislature,
and not the courts."

Texas is not unique in recognizing the validity of a legislative act which dele-
gates to the people the right to define a subdivision of the county. See 70 A.L.R.
1064.

If the language of the original Act (Chapter 126, Acts of the 26th Legis-
lature) dealing with horses, etc., had been retained, we think that under the au-
thority of the Armstrong case, supra, it would be the legal duty of the commis-
sioners' court to call an election in any area within the county which had been
described in the petition presented to it and failing in this, mandamus would lie
to require the court to act. Holman v. Pabst, 27 S. W. (2d) 340.

However, such was not the case, for the act under consideration was
amended in 1903 by Chapter 71 of the Acts of the 28th Legislature at page 97, the
amendment adding this new language: "and defined by the Commissioners'
Court." This addition as it has been underscored above in the present statute,
has been carried forward without change through all subsequent amendments
to the Act. It is helpful to note the legislative circumstances that gave rise to
the addition in this respect. Senate Bill No. 8 was originally offered in the 28th
Legislature as an amendment to Section 1, Chapter 128, Acts of the 26th Legis-
lature with the sole purpose of bringing McLennan and Limestone counties under
its terms. See the first reading of the bill by Senator Mills, page 12, Senate
Journal, Regular and First Called Session, 28th Legislature. Several amend-
ments were offered during the history of the bill, but material to our inquiry
here is the amendment added by the House (p. 298, H. J., 28th Leg., Regular
and First Called Sessions) whereby "justice precinct" was to be substituted
for "subdivision" where it ¬ppeared in the bill. The Senate refused to concur
in the House amendment (p. 302, S. J., 28th Leg.) and finally a Free Conference
Committee proposed that in lieu of the House amendment substituting "justice
precinct" for "subdivision" in the bill that this language be used: "such subdivi-
sion of a county as may be described in the petition and defined by the Commis-
sioners' Court . . . ." (p. 444, S. J., 28th Leg.)

The language substituted by the Free Conference Committee was adopted
and has been carried forward in the law and appears in the present Act. We think
it clear that the present provision was the outgrowth of a compromise between the
House, which sought to limit stock law elections to justice precincts, which the
commissioners' court had a right to define in the exercise of its discretion, and

the Senate which desired no such restriction upon the right of the people to determine the issue for themselves in an area selected by the freeholders. The language proposed by the Free Conference Committee and subsequently enacted into law was therefore intended to be less restrictive than the House limitation of the elections to the "justice precinct" and more restrictive than the previous limitation of the old statute to "any subdivision" of the county to be selected and described by the freeholders themselves.

We think the proper construction of the present provision of this statute places the commissioners' court under a legal duty to call the election upon presentation of a proper petition of freeholders where the area described in the petition is confined to a subdivision of a county which has been previously defined by the commissioners' court such as a justice precinct, commissioners' precinct or voting precinct.

However, where the stock law election petition describes an area which has not been previously defined by the commissioners' court as a subdivision of the county, it is our view that the commissioners' court may exercise its discretion in the matter of ordering the election and may refuse, for good cause, to define the proposed area as a subdivision for calling a stock law election. According to the general rule we think the commissioners' court's action would be subject to review by the courts and could be revised if a clear abuse of discretion could be shown. See 11 Tex. Jur. 557; Dubose v. Woods, (Civ. App.) 162 S. W. 3.

Our reasoning has led us to answer your first question in the negative. Since the proposed district involved in Shelby County is not one previously defined as a subdivision for any purpose by the commissioners' court we think your commissioners' court is under no legal duty to order the election but the court may do so in the exercise of the discretionary power with which it is vested by the law.

Answering the second question put to us, it is our opinion that the commissioners' court may order the election in its discretion, and that the validity of the election would be unaffected by the fact that an incorporated town is located within the proposed subdivision. See Bishop v. State, 167 S. W. 363; Lambert v. Scurlock, et al., 285 S. W. 679, and English v. State, 292 S. W. 229.

As to whether the commissioners' court has abused its discretion in refusing to order the election for which it was petitioned we are unable to say. This question would involve a careful consideration of all circumstances and considerations entering into the decision of the court. We do not have

these at hand and furthermore if we did the question would remain largely one of fact.

We hope we have adequately covered the points inquired about and please be assured that it will be a pleasure for us to serve you at any time.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By       *Eugene Alvis*

Eugene Alvis
Assistant

EA:db

F. C. C.

APPROVED JAN 28, 1944

*Grover Sellers*

ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion
Committee

By *A. W.*
Chairman